DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

IRA FRANK,                          )
                                    )
              Plaintiff,            )
                                    )
         v.                         )    Civil No. 2009-66
                                    )
GOVERNMENT OF THE VIRGIN            )
ISLANDS, and BERNADETTE             )
WILLIAMS, ACTING TAX ASSESSOR,      )
                                    )
              Defendants.           )
_____     )

ATTORNEYS:

Joseph A. DiRuzzo, III, Esq.
St. Thomas, U.S.V.I.
     For Ira Frank.

Carol Thomas-Jacobs, Esq.
St. Thomas, U.S.V.I.
     For the defendants.

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court are the motions of Ira Frank ("Frank"),
the Government of the Virgin Islands and Bernadette Williams,
Acting Tax Assessor ("Williams") (collectively, the
"Government") for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Frank's Claims

Frank is the owner of a fractional interest in two
residential properties on St. Thomas. His interest in these
properties is commonly known as timeshare ownership. The first

timeshare property is known as Bluebeard's Castle Hilltop Unit 214, week 46, Tax Assessor's Parcel Identification number 1-05402-1034-BT (the "Hilltop Unit"). The second is known as Bluebeard's Castle Pirates' Pension Unit 407, week 31, Tax Assessor's Parcel Identification number 1-05402-1043-PE (the "Pirates' Pension Unit").

Frank received tax bills for the 1998–2006 tax years for the Hilltop Unit and for the 2005 and 2006 tax years for the Pirates' Pension Unit. He asserts that substantially similar units at the Hilltop and Pirates' Pension properties received widely varying assessment values. After tendering payment for his tax bills for these units, he requested review of several assessments by sending appeals to the Virgin Islands Board of Tax Review ("Board of Tax Review").

In 2001, 2002, 2003, and 2004 the full value of the Hilltop unit was assessed at $14,247, $14,510, $14,510, and $14,309, respectively. Frank appealed these assessments to the Board of Tax Review. In 2005 and 2006 the Pirates' Pension unit was assessed at $10,889 and $4,600, respectively. He also appealed the 2005 and 2006 tax bills for his Pirates' Pension unit. Frank alleges that he did not receive a timely hearing for any of his appeals, that he was not provided a hearing within sixty days of

filing as required under Virgin Islands law, and that he did not

receive a prompt refund.

Each fractional interest of the Hilltop Unit and the

Pirates' Pension Unit were assessed separately. Both timeshare

properties are divided up among their owners on a weekly basis.

Thus, for each year the Tax Assessor assessed fifty-two separate

interests in the property. Each fractional interest was assessed

only once a year. The units themselves were assessed fifty-two

times.

On March 13, 2009, the Board of Tax Review heard Frank's

appeals for the 2001–2004 tax assessments of the Hilltop unit.[1]

Following the March 13, 2009 hearing, the Board of Tax

Review reduced the assessment for the Hilltop Unit for the years

2001, 2002, and 2003 to $7,000 for each year. The assessment for

2004 was reduced to $6,000. Frank avers he has not yet had a

determination about his 2005 tax bills.

In 2008, Frank paid his 2006 tax bills in full. Those tax

bills were subsequently rescinded. Frank has received a credit

---

[1] A Board of Tax Review hearing regarding the appeals of Frank's 2006
tax bills was originally scheduled for February 26, 2009. At Frank's request,
the Administrative hearing officer granted a continuance of his hearing on
the 2006 tax bills. On March 13, 2009 Frank also requested a continuance on
the day of the hearing, or in the alternative asked to appear telephonically.
Frank was denied his request for that continuance and appeared telephonically
at the hearing.

to his 2007 tax bills for the amount of his 2006 tax bills which were rescinded.

On April 30, 2009, Frank initiated the present action. Frank asserts ten counts in his amended complaint. Count One asserts a claim for preliminary and permanent injunctive relief to prevent the Government from collecting taxes until tax assessments have been determined in accordance with Title Thirty-Three, Sections 2301(a), 2402(a), and 2404(a) of the Virgin Islands Code. Count Two asserts a violation of Title Forty-Two, Section 1983 of the United States Code against Williams because of alleged violations of substantive and procedural due process in the appraisal practices of the Tax Assessor's office. Count Three asserts a section 1983 claim against Williams based on violations of the Equal Protection Clause of the Constitution. Count Four asserts that the level of functioning of the Board of Tax Review is violative of due process. Count Five asserts a claim for refund for tax overpayments by taxpayers of 2006 tax bills. Count Six asserts an unjust enrichment claim. Count Seven asserts a fraud claim. Count Eight asserts a section 1983 claim against the defendants because of an alleged denial of equal protection by Act. No. 6991 ("Act 6991"). Count Nine asserts a violation of Title Forty-Eight, Section 1574(a) of the United States Code. Count

Ten asserts that Act 6991 violates the Privileges and Immunities Clause of the U.S. Constitution.

On March 31, 2010, this Court dismissed all of Frank's claims related to the tax appraisal practices for the 1998–2004 assessments of the Hilltop Unit; Frank's fraud claim (Count Seven); and Frank's section 1574 claim (Count Nine).

Frank now moves for summary judgment on Counts One, Two, Three, Five, Six, Eight, and Ten. The defendants also move for summary judgment on all counts.

## B. Parallel Litigation in *Berne Corporation v. Government of the Virgin Islands*, Civil Nos. 2000-141 et al.

On May 12, 2003, this Court issued a Decree enjoining the Government of the Virgin Islands from assessing any and all real property taxes until two conditions were satisfied. *Berne Corp. v. Gov't of the V.I.*, 262 F. Supp. 2d 540, 575–77 (D.V.I. 2003), *aff'd*, 105 Fed. App'x 324 (2004). The first condition was that the Government establish a property tax system that reliably and credibly assessed and taxed all real property on its actual value, as required by Title Forty-Eight, Sections 1401 through 1401e of the United States Code ("sections 1401-1403e"). *See id.* at 575. The second condition was that the Board of Tax Review consistently hold hearings and reach determinations on appeals within sixty days. *See id.*

The Court also held that the Government could issue bills
based on the assessment values for the 1998 calendar year
reflected in the 1999 tax bills if it provided a mechanism to
adjust the assessments and bills retroactively. *See id.*
Thereafter, the Legislature of the Virgin Islands passed Act No.
6586, which provided for such a mechanism. Accordingly, on
August 13, 2003, the Court modified the May 12, 2003 injunction
to permit the Government to issue tax bills based on the 1998
assessments. *In re Tax Litig.*, 276 F. Supp. 2d 435, 436 (D.V.I.
2003).

On June 29, 2007, Congress repealed sections 1401-1401e.

On September 3, 2008, the Government indicated to the Court
that the 2006 property tax bills were issued at rates not based
on the 1998 assessments. *Berne Corp. v. Gov't of the V.I.*, 50
V.I. 638, 643 (D.V.I. 2008). On September 11, 2008, the Court
ordered the Government to "rescind all tax bills issued at a
rate other than that prescribed in the May 12, 2003 Decree." *Id.*
at 654.

On that same day, the Court also vacated the portion of the
May 12, 2003 Decree that required real property taxes to be
assessed in compliance with sections 1401-1401e. *Berne Corp. v.
Gov't of the V.I.*, 50 V.I. 655, 676 (D.V.I. 2008).

On March 10, 2010, the Virgin Islands Legislature enacted

Act No. 7154, which authorized the Government to

> issue real property tax bills and collect taxes at the
> 1998 rate and assessment level for tax years 2006,
> 2007, 2008, 2009 and for future tax years, or until
> such time as the District Court vacates the May 12,
> 2003 injunction or permits the Tax Assessor to collect
> property taxes at a rate other than that set forth in
> the Court's August 13, 2003 Order.

The defendants assert that in July 2010, the Tax Assessor issued

the 2006 real property tax bills at the 1998 rate, in accordance

with Act No. 7154 and the May 12, 2003 Decree.

On January 20, 2011, this Court lifted the May 21, 2003,

Decree after having found that the Government had satisfied the

Decree's requirements. *Berne Corp. v. Gov't of the V.I.*, Civil

Nos. 2000-141 et al. (CVG), at *22 (D.V.I. Jan. 20, 2011) (Slip

Opinion). Specifically, the Court found that the Board of Tax

Review now provided taxpayers with thirty days of notice prior

to the hearing of their appeals, that nearly all of the

outstanding appeals had been resolved, and that the Board now

provided taxpayers an opportunity to present evidence in support

of their appeals. *Id.* at 11, 15-20. The Court thus held that the

Government could "collect tax bills prospectively from tax year

2010 at rates other than those based on the 1998 assessments."

*Id.* at 22. The Court continued to monitor the Government for the

next six months. *Id.* On July 14, 2011, the Court determined that

there was no longer any need for the continued monitoring of the operations of the Board of Tax Review. *Berne Corp. v. Gov't of the V.I.*, Civil Nos. 2000-141 et al. (CVG), at *2 (D.V.I. July 14, 2011) (Slip Opinion).

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the opposing party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). If the parties file cross-motions for summary judgment, a court "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D.Pa. 2003) (citation and internal quotation marks omitted).

### III. <u>ANALYSIS</u>

### A. <u>Count One: Claim for Injunctive Relief</u>

Frank seeks a preliminary and permanent injunction restraining the defendants from collecting property taxes in violation of Title Thirty-Three, Sections 2301, 2402, and 2404 of the Virgin Islands Code. The Government argues that Frank's claims under sections 2301 and 2404 are moot because of the passage of Act. No. 6991, which amended those statutes. The Government further argues that Frank's section 2402 claim has

been rendered moot by the passage of Act. No. 7154, which

amended that statute, and the May 12, 2003 Decree.

**1. Mootness of sections 2301 and 2404 Claims**

Prior to 2008, Title Thirty-Three, Section 2301 of the

Virgin Islands Code provided: "For every calendar year the value

of real property shall be assessed . . . ." V.I. CODE ANN. tit.

33, § 2301(a) (1994). Frank argues section 2301 only permits the

Tax Assessor to assess a piece of property once a year. He

claims that by assessing each fractional interest in the

timeshare separately, the Tax Assessor assessed his property on

a weekly basis, in violation of section 2301(a).

Prior to 2008, Title Thirty-Three, Section 2404(a) of the

Virgin Islands Code provided

> In computing the actual value of real property subject
> to taxation, the assessor shall take in consideration
> all of the following elements and incidents--
>
>   (1) location and surroundings;
>
>   (2) quality or fertility;
>
>   (3) condition of structures;
>
>   (4) recent cost to the present owner;
>
>   (5) recent sale price of adjacent property;
>
>   (6) recent bona fide offer;
>
>   (7) accessibility;
>
>   (8) proximity to public facilities, conveniences
> and utilities; and

(9) rental or income derived from the property.

V.I. CODE ANN. tit. 33, § 2404(a) (1994). Frank claims that the Tax Assessor failed to properly account for his time-shares' location and surroundings, quality, condition, and recent cost.

On March 10, 2008, the Virgin Islands legislature passed Act. 6991, which amended sections 2301 and 2404. Section 2301(a) now provides

> (a) All real property in the Virgin Islands subject to taxation must be assessed at 100 percent of its fair market value as calculated using the assessment methods set forth in sections 2403 and 2404 of this chapter; . . . .

V.I. CODE ANN. tit 33, § 2301(a) (2011). Section 2404(a) now provides

> In assessing the fair market value of real property, the Tax Assessor shall use the applicable standards promulgated by the International Association of Assessing Officers ("IAAO"), and shall promulgate such rules and regulation as necessary to implement the IAAO standards for all classifications of property set forth in Section 2301(b) of this title.

V.I. CODE ANN. tit. 33, § 2404(a) (2011). The IAAO Standards for Mass Appraisal of Real Property provide for a variety of alternative assessment methods, such as cost to the owner, comparison of recent sales of comparable property, income generated by the property, or land valuation. IAAO STANDARDS FOR MASS APPRAISAL OF REAL PROPERTY 8-10, *available at* www.iaao.org/uploads/StandardOnMassAppraisal.pdf. Assessors are

further encouraged to use different standards for different types of property. *Id.* at 10–11.

Given the change in appraisal standards, it appears that Frank's complaint no longer presents a controversy that would afford this court's jurisdiction. Indeed, "Article III of the Constitution limits federal Judicial Power, that is, federal court jurisdiction, to Cases and Controversies." *Thomas v. Attorney Gen. of the U.S.*, 625 F.3d 134, 139 (3d Cir. 2010) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980)) (internal quotation marks omitted). "This case or controversy requirement limits the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Id.* (quoting *Parole Comm'n*, 445 U.S. at 396 (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968))) (internal quotation marks omitted).

"When the questions or issues presented are no longer live, the case is moot." *Id.* at 139–40(quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (internal quotation marks omitted). "That is, an issue is moot if changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* (quoting *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996)

(internal quotation marks omitted). *See also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quoting *Parole Comm'n*, 445 U.S. at 397) (internal quotation marks omitted)).

"The mootness doctrine is centrally concerned with the court's ability to grant effective relief: If developments occur during the course of the adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010) (quoting *Cnty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.2d 690, 698-99 (3d Cir. 1996))) (internal quotation marks omitted).

Here, Frank complains that appraisals occurred more frequently than section 2301 permits. He also argues that appraisals fail to consider location, and quality, and cost of the property as section 2404 requires. However, section 2301 no longer provides for any time period in which assessments are to be made. Additionally, section 2404 no longer requires the Tax

Assessor to consider the location and surroundings, quality, condition, and recent cost. As such, there appears to be no live controversy over whether Frank is entitled to prospective relief because there is no longer any prospect of the Government violating sections 2301 or 2404 in the manner about which Frank complains.

Notwithstanding that circumstance, Frank may still be entitled to relief. The Supreme Court has recognized an exception to the mootness doctrine for cases "that are capable of repetition while evading review." *Diop v. ICE/Homeland Sec.*, No. 10-1113, 2001 WL 3849739, at *4, 2011 U.S. App. LEXIS 18202, at *13 (3d Cir. Sept. 1, 2011) (quoting *Turner v. Rogers*, 131 S. Ct. 2507, 2515 (2011) (quoting *S. Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911))) (internal quotation marks omitted). "This exception applies when (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id*. at *4, *13–14 (quoting *Turner*, 131 S. Ct. at 2515 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975))).

Frank will continue to be subject to taxation by the Defendants so long as he continues to own property in the Virgin Islands. However, the potential for a violation of sections 2301

and 2404 was obviated by the passage of Act 6991. Unless and until the Defendants engage in an ongoing violation of the current versions of sections 2301 or 2404, there is no live controversy about whether Frank is entitled to prospective relief. This Court thus finds Frank's claims under sections 2301 and 2404 to be moot.

### 2. Mootness and Ripeness of Section 2402 Claim

Frank seeks a preliminary and permanent injunction preventing the Government from collecting taxes on real property until it complies with Title Thirty-Three, Section 2402 of the Virgin Islands Code. The defendants argue that this claim is moot.

Section 2402(a), in pertinent part, provides: "The tax assessor shall once every five (5) years, upon actual view, value and assess all residential real property . . . ." V.I. CODE ANN. tit. 33, § 2402(a). The Government admits that it does not inspect every time-share unit at the Hilltop or Pirates' Pension complexes. Instead, a tax assessor typically visits the complex and inspects a small number of the units. The assessments of the remaining units are based on this limited inspection. Frank asserts this policy violates section 2402(a).

In support of his claim under section 2402, Frank points to a transcript of the testimony of Tax Assessor Bernadette

Williams. Def.'s Ex. 12, ECF No. 86-12. In that deposition,

Williams admits that her staff does not typically visit each

unit in a multi-unit residential complex. Def.'s Ex. 12, ECF No.

86-12, 40:5-9, 13-16. However, this testimony was given on March

13, 2009, before the May 12, 2003, Decree was lifted. At that

time, the Government was not permitted to issue tax bills at a

rate higher than the 1998 assessment levels. Only after January

20, 2011, was the Government permitted to issue tax bills based

on new assessment levels. *See Berne Corp. v. Gov't of the V.I.*,

Civil Nos. 2000-141 et al. (CVG), at *22 (D.V.I. Jan. 20, 2011)

(Slip Opinion). Because the assessments were frozen at the 1998

levels from 2003 until 2011, the Government could not have

violated § 2402 during that period. Indeed, at the time this

action was initiated, the rate remained at the 1998 level. Thus,

to the extent Frank complains of violations of § 2402 that

occurred prior to the lifting of the May 12, 2003, Decree, there

is no live controversy and thus his claims are moot.

To the extent Frank seeks relief on a theory that the

Government will violate section 2402 in the future, his petition

is flawed. Related to the doctrine of mootness is the doctrine

of ripeness. The ripeness doctrine "seeks to prevent the courts,

through the avoidance of premature adjudication, from entangling

themselves in abstract disagreements." *Planned Parenthood of*

*Cent. N.J. v. Farmer*, 220 F.3d 127, 147 (quoting *Artway*, 81 F.3d

at 1246-47 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148

(1967), *overruled on other grounds, Califano v. Sanders*, 430

U.S. 99 (1977))) (internal quotation marks omitted). "To

determine whether a claim is ripe, a court must weigh (1) the

hardship to the parties of withholding court consideration; and

(2) the fitness of the issues for judicial review." *Id.* at 148

(quoting *Artway* at 1247).

Frank has not articulated any basis in fact for suspecting

that the Government will violate section 2402. Moreover, this

Court lacks jurisdiction to issue an opinion based on mere

speculation that the Government will engage in unlawful

activity.

**B. Counts Two and Three: Section 1983 Claims for Violations of Substantive and Procedural Due Process, and Equal Protection**

In Counts Two and Three of his amended complaint, Frank

asserts that the defendants denied him substantive and

procedural due process, and equal protection of the laws by

collecting taxes from him in violation of Title Thirty-Three,

Sections 2301, 2402, and 2404 of the Virgin Islands Code. This

Court has previously dismissed all of Frank's pre-2004 claims as

untimely. Thus, only tax bills issued after the May 12, 2003

Decree went into effect remain at issue.

The May 12, 2003, Decree prevented the Government from collecting taxes at anything other than the 1998 assessment levels. *See Berne Corp.*, 262 F. Supp. 2d at 575–77. With the exception of the tax bills issued in 2008 at 2006 assessment levels, Frank may thus only prevail on his challenge to the post-2004 tax bills if the 1998 assessment level was unlawful. However, this Court dismissed Frank's challenge to the 1998 assessment level as time-barred. Since Frank cannot challenge the 1998 assessment levels, he has no basis on which to challenge the subsequent tax bills.

## C. Count Four: Declarative and Injunctive Relief for Constitutionally Inadequate Tax Review Procedures

The Government seeks summary judgment on Count Four of Frank's Complaint. In Count Four, Frank asserts that the Board of Tax Review's procedures are constitutionally inadequate. Frank seeks a declaration that these procedures are inadequate and an injunction restraining the Government from collecting any real property taxes until he has received adequate review of his assessments or the Government establishes adequate review procedures.

This Court has previously determined that the Board of Tax Review's procedures were constitutionally inadequate. *See Berne Corp.* 262 F. Supp. 2d at 575–77 (D.V.I. 2003), *aff'd*, 105 Fed. App'x 324 (2004). In response, this Court enjoined the

Government from collecting taxes at anything other than the 1998 assessment levels until constitutionally adequate review procedures were implemented. *Id.* Until January 20, 2011, the Government was precluded by this Court's order from assessing the real property taxes of any person--including Frank--at an assessment level different than the 1998 assessment levels. On January 20, 2011, the Court determined that the Government's tax assessment methods were constitutionally adequate and lifted the May 12, 2003, Decree.

As discussed above, Frank's pre-2004 claims have been dismissed as untimely. This included Frank's claim that his 1998 assessments were unconstitutional. Since the assessments of Frank's property after 2004 up until January 20, 2011 were based on the 1998 assessment rate, Frank cannot challenge these assessments.

Frank has not asserted any constitutional violation arising after January 20, 2011. Frank has not articulated any basis in fact for suspecting that the Government will violate the Constitution in the future. Moreover, this Court lacks jurisdiction to issue an opinion based on mere speculation that the Government will engage in unlawful activity. Accordingly, Count Four is not yet ripe for review.

## E. Count Six: Claim for Unjust Enrichment

In Count Six of his complaint, Frank alleges the Government has been unjustly enriched by refusing to refund his 2006 overpayments and further owes him $23.06 in interest on those overpayments.

There are no Virgin Islands statutes that provide for unjust enrichment causes of action. However, pursuant to Title One, Section Four of the Virgin Islands Code, "[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." "The restatements of law approved by the American Law Institute are only pertinent if there are no existing applicable Virgin Islands statutes." *V.I. Distrib., Inc. v. Durkee Foods*, 19 V.I. 85, 92 (D.V.I. 1982).

A claim for unjust enrichment is a recognized cause of action in the Virgin Islands. *See Terrace v. Williams*, 51 V.I. 225, 244–45 (V.I. 2009) ("The Restatement provides that a person who has been unjustly enriched at the expense of another is required to make restitution by the other.' " (quoting RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937))); *see also Martin v. Martin*, S. Ct. Civ. No. 2007-0117, 2010 V.I. Supreme LEXIS 45, 26–27 (V.I.

Sept. 15, 2010) (discussing elements of unjust enrichment cause

of action).

In *Umland v. Plano Fin. Servs.*, 542 F.3d 59 (3d Cir. 2008),

the Court of Appeals for the Third Circuit addressed a similar

unjust enrichment claim. In that case, the plaintiff brought an

unjust enrichment claim for the "wrongful collection" of the

FICA tax. *Id.* at 68. The court looked to the language of the

relevant Internal Revenue Code provision--26 U.S.C. § 7422--

which provided that "*any* suit for *any* sum wrongfully collected

in *any* manner" must be brought as a refund action. *Id.* (quoting

*Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1410 (9th Cir.

1998)) (internal quotation marks omitted)). Accordingly, the

Third Circuit held that section 7422 "expressly preempts [the

plaintiff's] unjust enrichment claim." *Id.* The court explained

that "[t]his result protects the integrity of the administrative

scheme for tax refunds that Congress has approved and that the

IRS has implemented." *Id.*

Similarly, in *Hefferman v. U.S.V.I.*, Civil No. 2009-87

(RLF), 2010 WL 4942160, 2010 U.S. Dist. LEXIS 126259 (D.V.I.

Nov. 30, 2010), the plaintiff brought an unjust-enrichment claim

seeking restitution of alleged income-tax overpayment. *Id.* at WL

* 1, LEXIS *1-2. This Court held that the plaintiff's common-law

claim was preempted by the state and federal refund scheme. *Id.*

at WL *6, LEXIS *19. First, the Court looked to the language of

the relevant statute, V.I. CODE ANN. tit. 33, § 1692, and its

federal counterpart, 26 U.S.C. § 7422. Section 7422 provides, in

pertinent part: "No suit or proceeding shall be maintained in

any court for the recovery of any internal revenue tax alleged

to have been erroneously or illegally assessed . . . until a

claim for refund or credit has been duly filed with the

Secretary [of the IRS]." 26 U.S.C. § 7422. V.I. CODE ANN. tit 33,

§ 1692 is virtually identical, but uses the word "Director" in

place of Secretary." The Court held that the broad language of

this provision indicated the intent of the Virgin Islands

Legislature and Congress that these sections "be the exclusive

means of obtaining a tax refund." *Hefferman v. U.S.V.I.*, Civil

No. 2009-87 (RLF), 2010 WL 4942160, at *4, 2010 U.S. Dist. LEXIS

126259, at *12 (D.V.I. Nov. 30, 2010) (citing *United States v.

Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 5-8 (2008); *Umland v.

PLANCO Fin. Servs., Inc.*, 542 F.3d 59 (3d Cir. 2008).

Second, this Court looked to the policies underlying the

tax-refund scheme. Specifically, the Court noted that the three-

year statute of limitations for tax claims was considerably

shorter than the six-year statute for an unjust-enrichment

claim. *Id.* at WL *5, LEXIS *15-16. A shorter statute of

limitations was created for tax claims because "suits against

the United States for the recovery of taxes impeded effective
administration of the revenue laws. *Id.* at WL *5, LEXIS *16
(quoting *Clintwood*, 553 U.S. at 8 (quoting *United States v. A.S.
Kreider Co.*, 313 U.S. 443, 447 (1941). Because the unjust-
enrichment claim had a much longer statute of limitations, this
Court held that Congress and the Legislature must have meant to
preempt the common-law claim. *Id.* at WL *5, LEXIS *6. Otherwise,
any taxpayer could circumvent the statute of limitations by
bringing a claim for unjust enrichment. *Id.*

The Virgin Islands legislature has enacted in Subtitle 2 of
Title 33 a comprehensive plan for the procedure and
administration of the property tax. Section 2451(a) provides, in
pertinent part:

> Any person aggrieved by the action of the Tax Assessor
> in relation to the valuation of his property may make
> written complaint thereof to the Board of Tax Review .
> . . . No such complaint or claim shall be considered
> by the Board unless it is presented no later than
> September 15th succeeding the year for which the
> assessment is made . . . .

V.I. CODE ANN. tit. 33, § 2451(a). Section 2453 further provides,
in pertinent part: "The decision of the Board of Tax Review in
all matters coming before it under this subtitle shall be final
unless the taxpayer, within 30 days after receipt from the Board
of the notice [of the Board's decision], petitions the Superior
Court of the Virgin Islands for a review." *Id.* at § 2453(d).

The broad language of section 2451, covering "any person aggrieved by the action of the Tax Assessor," is sufficient to expressly preempt Frank's unjust enrichment claim. *See Umland*, 542 F.3d at 68. Moreover, this language indicates the intent of the Virgin Islands Legislature for section 2451 to supplant common-law actions. The fact that a taxpayer is given the right to appeal to the Superior Court further indicates that the Legislature did not intend for a civil action to be a taxpayer's first means of recourse. Moreover, section 2451 requires claims to be brought by September 15 of the year in which the assessment is made--in effect, a statute of limitations of less than a year. This time limitation is considerably shorter than the six-year statute of limitations otherwise afforded to unjust-enrichment claims. Allowing property taxpayers to pursue common-law claims for refunds would in effect render the time limitation of section 2451 a dead letter. Thus, section 2451 preempts Frank's unjust-enrichment claim.

## F. Count Eight: Equal Protection Clause

In Count Eight of Frank's amended complaint, he alleges that Title Thirty-Three, Section 2301(b) of the Virgin Islands Code violates the Equal Protection Clause of the Fourteenth Amendment by taxing timeshare property at a higher rate than other forms of residential property.

Section 2301(b) provides:

(b) The Tax Assessor shall levy and collect on real property a tax at the mil rates for each classification of real property specified in this subsection as follows:

(1) unimproved non-commercial real property, at .004946;

(2) residential real property, at .003770;

(3) commercial real property, at .007110; and

(4) timeshare real property at .014070.

V.I. CODE ANN. tit. 33, § 2301(b). Section 2301(c)(2) defines *residential real property* as "any real property on which a residence is located, including apartments, condominiums, cooperatives, but excluding timeshare real property." *Id.* at § 2301(c)(2). Section 2301(c)(4) defines *timeshare real property* as "any real property that is owned or leased by several persons jointly and in which the ownership or leasehold interests are for fixed periods of time." *Id.* at § 2301(c)(4).

The Government argues that it is entitled to summary judgment on Count Eight because the tax scheme codified in section 2301(b) bears a rational relationship to a legitimate state interest. "The Equal protection Clause applies only to taxation which in fact bears unequally on person or property of the same class." *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336, 343 (1989) (quoting *Charleston*

*Fed. Savs. & Loan Ass'n v. Alderson*, 324 U.S. 182, 190 (1945)

(collecting cases)) (internal quotation marks omitted). "A State

may divide different kinds of property into classes and assign

to each class a different tax burden so long as those divisions

are reasonable." *Id.* at 344 (citing *Allied Stores of Ohio v.

Bowers*, 358 U.S. 522, 526-27 (1959) ("The State may impose

different specific taxes upon different trades and professions

and may vary the rate upon various products."). So long as "the

selection or classification is neither capricious nor arbitrary,

and rests upon some reasonable consideration of difference or

policy, there is no denial of the equal protection of the law."

*Id.* (quoting *Brown-Forman Co. v. Kentucky*, 217 U.S. 563, 573

(1910). *See, e.g.*, *Lehnhausen v. Lake Shore Auto Parts Co.*, 410

U.S. 356 (1973) (upholding an *ad valorem* tax scheme which taxed

the personalty of corporations at a different rate than the

personalty of individuals).

In *Kunkel's Estate v. United States*, 698 F.2d 408 (3d Cir.

1982), the Estate challenged the Pennsylvania estate-tax scheme

as violating the Equal Protection Clause. *Id.* at 412. Under the

provision challenged, bequests to close relatives were taxed at

six percent, while all other bequests were taxed at fifteen

percent. *Id.* The Court of Appeals denied the Estate's challenge,

explaining

> The district court characterized the differential tax
> rates . . . as an arbitrary attempt to create
> additional tax revenues . . . . The purpose of the
> statute, however, could just as easily be
> characterized as the promotion of close family
> relationships: bequests to close relatives are
> encouraged by taxing those bequests at a lower rate
> than are bequests to more distant relatives and
> nonrelatives. Having made this observation, the
> inquiry is at an end; a legitimate purpose has been
> identified, and a rational relationship between that
> purpose and the means chosen to foster it has been
> established.

*Id.* at 416 (citing *Vance v. Bradley*, 440 U.S. 93, 97 (1979))

(internal quotation marks omitted).

Several courts have recognized that states have a

legitimate interest in encouraging and sustaining home ownership

by taxing homes at a rate less than other forms of residential

property.

In *Reinish v. Clark*, 765 So.2d 197 (Fla. App. 1 Dist.

2000), the Reinishes brought an equal protection challenge to a

Florida homeowner tax exemption. *Id.* at 203. The Florida scheme

exempted from property taxes the first $25,000 of the assessed

value of a "permanent residence." *Id.* at 202. The Reinishes

maintained their permanent residence in Chicago but owned a

vacation home in Florida. *Id.* The court held that the exemption

was supported by a legitimate interest:

> The home has a history of special significance in
> Florida law. . . . Public policy considerations favor
> laws protecting the basic homestead, and which promote
> the stability and welfare of the state by encouraging

> property ownership and independence on the part of the
> citizen and by preserving a home where the family may
> be sheltered and live beyond the reach of economic
> misfortune. . . . Mindful of the historic, civic, and
> economic significance of the need to foster and
> protect the primary residence of Florida homeowners,
> without an attendant need to give the same high level
> of protection to other types of residential
> properties, we conclude . . . that the Florida
> homestead tax exemption's classification has some
> reasonable basis and does not offend equal protection
> concerns.

*Id.* at 206-07 (internal quotation marks and citations omitted).

The court further noted that the scheme did not impermissibly

discriminate against non-residents, since both residents and

non-residents alike were not entitled to an exemption for a

second home. *Id.* at 205.

Similarly, in *Rubin v. Glaser*, 416 A.2d 382 (N.J. 1980),

the Supreme Court of New Jersey upheld the New Jersey homestead

rebate against an equal protection challenge brought by people

who lived out-of-state but owned an in-state summer house. The

statute provided for a total rebate of all property taxes

assessed on a home owned in the state. *Id.* at 383. The Court

held that the statute had a legitimate purpose because it "was

meant to assist the taxpayer in times of escalating property

taxes to keep a roof over his head." *Id.* at 386. Further, the

statute was not directed against nonresidents because "New

Jersey residents who do not own a principal residence in the

State are on the same footing as nonresidents." *Id.*

Here, section 2301(b) has the legitimate purpose of
"keep[ing] a roof over [the] head[s]" of Virgin Islands
homeowners. The statute does not contain a declaration of
purpose. However, in a letter proposing Act No. 6991, the
Governor of the Virgin Islands, John P. de Jongh, Jr., explained
that "This system of multiple rates, used in many jurisdictions
throughout the United States, results in smaller residential
real property tax increases, thereby protecting the interests of
Virgin Islands homeowners." Given the historic, economic, and
social importance of the home, there is nothing unreasonable in
establishing a taxation scheme that fosters homeownership and
reduces the heavy realty tax burden in the Virgin Islands. Frank
argues that the fact that timeshares are taxed at nearly four
times the rate of residential property renders the scheme
unreasonable. However, the Legislature could well have concluded
that those who can afford timeshares have a correspondingly
greater ability to pay taxes. It is not the Court's place to
second-guess the policy decisions of the Legislature.

Section 2301(b) also draws no distinctions between
residents and non-residents. Any owner of a timeshare,
regardless of their residency, must pay taxes at the timeshare
rate. If Frank owned a house instead of his timeshares, he would
pay the residential property rate, even if he is a resident of

Virginia. Thus, section 2301(b) does not violate the Equal Protection Clause. Accordingly, the Court finds that the Government has satisfied its burden to show it is entitled to summary judgment on Count Eight.

Notwithstanding the legitimate purpose of section 2301(b), Frank argues that he is entitled to summary judgment on Count Eight because section 2301(b) was created with the intent to discriminate against non-resident property owners. Frank cites the letter of Virgin Islands Governor John P. de Jongh, Jr. quoted above, urging the legislature to adopt the current section 2301(b) scheme as evidence of discriminatory intent. However, it is undisputed that once a statute has been shown to bear a rational relationship to a legitimate purpose, the Equal Protection Clause has been satisfied. *See Kunkel's Estate*, 698 F.2d at 416. Moreover, de Jongh's letter can also be read as proposing a system that encourages and protects homeownership, while simultaneously maintaining a sufficient level of tax revenue by increasing taxes on property that is not a person's primary residence. Precisely such a scheme was upheld in *Rubin*, 416 A.2d at 386, and *Reinish*, 765 So.2d at 206-07. Aside from this letter, Frank asserts no other factual basis for the alleged discriminatory intent of section 2301(b). Thus, this

court finds that Frank has failed to satisfy his burden to show
that he is entitled to summary judgment on Count Eight.

## G. **Count Ten: Privileges and Immunities Clause**

In Count Ten of his complaint, Frank alleges that section
2301(b) violates the Privileges and Immunities Clause of Article
IV of the Constitution by infringing on his right to travel. The
Government argues that it is entitled to summary judgment on
this Count because section 2301(b) does not discriminate against
non-residents.

"The constitutional right to travel . . . embrac[es] at
least three components: (1) the right of a citizen of one state
to enter and leave another state; (2) the right to be treated as
a welcome visitor rather than an unfriendly alien when
temporarily present in the second state; and (3) for those
travelers who elect to become permanent residents, the right to
be treated like citizens of that state." *Michael C. ex rel.
Stephen C. v. Radnor Tp. Sch. Dist.*, 202 F.3d 642, 655 (2000)
(citing *Saenz v. Roe*, 526 U.S. 489, 500 (1999). A state may not
unjustifiably discriminate between residents and nonresidents in
the exercise of its taxing power. *See Austin v. New Hampshire*,
420 U.S. 656, 662-664 (1975). However, "[i]t is enough that the
state has secured a reasonably fair distribution of burdens, and
that no intentional discrimination has been made against

nonresidents." *Travelers' Ins. Co. v. Connecticut*, 185 U.S. 364,
371 (1901).

As discussed above, section 2301(b) draws no distinction
between resident and non-resident owners of timeshares. The law
is reasonably related to a legitimate purpose and thus is not
intentionally discriminatory. Moreover, the Supreme Court right-
to-travel cases have only acknowledged a violation of the right
where nonresidents were denied a basic necessity or important
right. *Compare Saenz*, 526 U.S. (striking down durational
residency requirement for Temporary Assistance to Needy
Families), *Memorial Hosp. v. Maricopa Cnty.*, 415 U.S. 250 (1974)
(striking down one-year residency requirement as a condition to
an indigent's receipt of non-emergent hospital or medical care
at county's expense), *Dunn v. Blumstein*, 405 U.S. 330 (striking
down durational residency requirement for voting), *Shapiro v.
Thompson*, 394 U.S. 618 (striking down one-year residency
requirement for receipt of welfare benefits), *with Sosna v.
Iowa*, 419 U.S. 393 (1975) (upholding one-year residency
requirement for divorce action), *Vlandis v. Kline*, 412 U.S. 44
(1973) (upholding one-year residency requirement as a condition
to lower tuition at state university). The imposition of a
higher tax burden on timeshares does not threaten a basic
necessity or important right. Section 2301(b) does not violate

the Privileges and Immunities Clause of Article IV. Thus, the Government has satisfied its burden to show that it is entitled to summary judgment on Count Ten.

Notwithstanding these principles, Frank argues that the right to travel is violated here because most timeshare owners are nonresidents. In support of this claim, Frank again cites the letter of Virgin Islands Governor John P. de Jongh, Jr. quoted above, urging the legislature to adopt the current section 2301(b) scheme as evidence of discriminatory intent. Assuming, without deciding, that the intent of the Governor can be imputed to the Legislature, this letter alone is not sufficient to demonstrate that tax burdens have been distributed unfairly or that there has been intentional discrimination. *See Travelers' Ins. Co.*, 185 U.S. at 371. As discussed previously, de Jongh's letter can also be read as proposing a system that encourages and protects homeownership, while simultaneously maintaining a sufficient level of tax revenue by increasing taxes on property that is not a person's primary residence. Precisely such a scheme was upheld in *Rubin*, 416 A.2d at 386, and *Reinish*, 765 So.2d at 206–07.

De Jongh's letter explicitly seeks to create a fairer system and never suggests that a distinction should be made between residents and non-residents. Aside from this letter,

Frank asserts no other factual basis for the alleged

discriminatory intent of section 2301(b). Therefore, Frank has

failed to satisfy his burden to show he is entitled to summary

judgment on Count Ten.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant summary

judgment in favor of the defendants on Counts One, Two, Three,

Four, Six, Eight, and Ten.


S\_____
        **Curtis V. Gómez**
        **Chief Judge**